**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| TRS INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: ELH-14-1543 |
| AMERICAN BUILD & DESIGN, INC., *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses the Motion for Default Judgment (ECF No. 9) filed by Plaintiff TRS Inc. ("TRS") against Defendants, American Build & Design, Inc. ("ABD") and Curtis Nelson ("Nelson") (collectively, the "Defendants"). Defendants have not filed an opposition, and their deadline has now passed. On June 30, 2014, Judge Hollander referred this case to me to review Plaintiff's motion and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302 (ECF No. 10). I have reviewed Plaintiff's Motion and accompanying exhibit. (ECF No. 9). No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2014). For the reasons discussed below, I respectfully recommend that Plaintiff's Motion (ECF No. 9) be GRANTED, and that damages be awarded as set forth herein.

**I.   BACKGROUND**

On May 9, 2014, TRS filed a Complaint[1] alleging that Defendants have failed to remunerate TRS for the delivery of 45 custom containers and 90 Vertical Twist Lock Stackers

---

[1] In its Complaint, filed on May 9, 2014, TRS alleged three counts: (1) breach of contract against ABD, as ABD has not and refuses to pay the outstanding balance on the total order; (2) breach of contract on the

("Stackers") (collectively referred to as "Total Order").[2]  TRS states that the amount due for the Total Order was $156,800.00.  Compl. ¶ 8.  TRS was contracted to deliver the containers and Stackers to the Army at Aberdeen Proving Grounds, in Aberdeen, Maryland, and it completed delivery of both orders between November 11, 2013 and February 20, 2014.  Compl. ¶ 10, Ex. A.

On November 11, 2013, TRS issued an invoice to Defendants, which included the disclaimer, "[t]itle and ownership of the equipment shall not pass to buyer until payment in full has been received."  Compl., Ex. B.  On December 17, 2013, Defendant Nelson executed a promissory note in favor of TRS for $119,850.00, in order to prompt TRS to ship part of the original order.  Compl. ¶ 13, Ex. C.  Although Defendants were paid in full by the Army for the shipment, Compl. ¶ 11, ABD only paid TRS $79,900.00 of its $156,800.00 debt.  Compl. ¶ 12.  At the time TRS filed its complaint, Defendants had an outstanding balance of $76,900.00.  Compl. ¶ 12.  The Army has not permitted TRS to reclaim possession of the containers not paid for by Defendants.  Compl. ¶ 15.

Defendants were served with a summons and the Complaint on May 29, 2014.  (ECF Nos. 5, 6).  Defendants' Answers were due on June 18, 2014.  *Id.*  Defendants did not file Answers or otherwise respond to the Complaint.  On June 24, 2014, TRS moved for Clerk's Entry of Default, and on June 26, 2014, the Clerk of Court entered an Order of Default against Defendants.  (ECF Nos. 7, 8). On June 30, 2014, TRS moved for a default judgment against Defendants.  (ECF No. 9).

---

Promissory Note against ABD and Mr. Nelson; and (3) conversion against ABD and Mr. Nelson.  Compl. ¶¶ 16-25.

[2] The delivery comprised two orders, the original purchase order, filed on November 14, 2013, and a supplemental order, filed December 30, 2013.  *See* Compl. ¶¶ 7–10.  The original order comprised forty-one containers and ninety Vertical Twist Lock Stackers, which was supplemented with an order of four additional containers. Both orders comprise the Total Order.  *Id.*

## II.    STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiff's Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See, e.g.*, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See, e.g.*, *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (noting that the court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that

there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, (1) the court must determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

### III. DISCUSSION

#### A. Jurisdiction and Venue

This Court's jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.[3] The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Compl. ¶ 2. Pursuant to 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in Maryland. Federal courts in diversity cases must apply the law of the forum state, including its choice of law rules. *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). In the absence of a choice of law provision, Maryland courts apply the doctrine of *lex locus contractus* when determining which state's law controls the construction of a contract. *U.S. Life Ins. Co. in New York v. Wilson*, 198 Md. App. 452, 462–63

---

[3] TRS is a New Jersey corporation, with a principal place of business in Avenel, New Jersey. Compl. ¶ 1. Defendant ABD is a California corporation, with its principal place of business in Vista, California; Mr Nelson is a California citizen with a residence in Vista, California. *Id.* at ¶ 2.

(2011). "Under this principle, the law of the jurisdiction where the contract was made controls its validity and construction." *Id.* at 463. "A contract is made wherever the last action occurs that is necessary to give the contract a binding effect." *Id.* The delivery of the Total Order by TRS to the Army at Aberdeen Proving Grounds in Aberdeen, Maryland bound the Defendants to the contract. Therefore, Maryland law applies to TRS's asserted common law causes of action.

### B.  Defendants' Liability

#### 1.  Count One - Breach of Contract on Total Order Against ABD

Count One of TRS's Complaint alleges that Defendants are liable for breach of contract because ABD has not paid the outstanding balance on the Total Order. (ECF No. 1, Exs. A, B). A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000). A contract exists where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.,* 392 F.3d 114, 123 (4th Cir. 2004). "In order to recover on a breach of contract claim, a plaintiff must prove that two or more parties formed a contract, that the defendant breached the contract, and that the plaintiff suffered actual damages as a result of the breach." *Parlette v. Parlette*, 88 Md. App. 628, 640 (1991).

TRS has submitted evidence to establish that it formed a contract with ABD, and that ABD has breached the terms of the contract as a result of nonpayment. TRS delivered forty-five containers and ninety Stackers at the cost of $156,800.00. Compl. ¶¶ 7, 8. Exhibit A lists the items sold, prices, and delivery dates, confirming ABD's receipt. Compl., Ex. A. According to TRS, ABD was paid in full for the order by the Army, which now possesses the containers and Stackers, but ABD has failed to pay TRS $76,900.00 of its $156,800.00 order. Almost two

months have passed since Defendants were served with TRS's Complaint, yet Defendants have not pleaded or otherwise asserted a defense by filing an Answer. (ECF No. 8). This Court accepts as true that TRS and ABD made the promises described in the Complaint and set forth in the invoice. *Ryan*, 253 F.3d at 780. Based on TRS's well-pleaded factual allegations, ABD is liable to TRS for breach of contract, and I recommend that this Court grant TRS's Motion for Default Judgment with respect to Count One.

### 2. Count Two - Breach of Contract on Promissory Note

TRS alleges that the balance owed by Defendants under the terms of the December 17, 2013 promissory note is $76,900.00. Compl. ¶ 20. Accepting as true TRS's well-pleaded allegations, with its supporting documentation, TRS has proven that: (1) TRS loaned Defendant Nelson, in his capacity as President of ABD, $119,850.00; (2) Defendants have failed to pay the promissory note in accordance with its terms, and therefore Defendants are in breach of the promissory note; (3) January 20, 2014 was the maturity date of the promissory note, and Defendants did not pay the principal and interest due by this deadline; and (4) TRS attempted to collect the amount owed by Defendants, to no avail. The promissory note also establishes that, in the event of a default, TRS is entitled to "attorneys' fees and other costs incurred by [TRS], together with interest from the dated [sic] of the demand until paid at the Default Rate."[4] Compl. Ex. C. ¶ 10. Accordingly, TRS has established that Defendants are in breach of the promissory note, and I recommend that this Court grant TRS's Motion for Default Judgment with respect to Count Two.

### 3. Count Three - Conversion

---

[4] The promissory note confusingly provides, "[i]nterest on the principle [sic] balance shall be five percent (0%) annual percentage rate (APR)." Compl. Ex. C ¶ 3. Perhaps recognizing the difficulty in collecting on those terms, it does not appear that TRS seeks to collect interest under the promissory note.

Finally, TRS alleges one count of conversion against Defendants for selling and delivering to the Army containers and equipment for which they had not paid in full, and to which they had not acquired title. Under Maryland law, the common law tort of conversion contains two elements. First, the plaintiff must prove that the defendant exerted "any distinct ownership or dominion…over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 261 (2004). "This act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Id.* Second, the defendant must have "an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* at 262; *see also Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, DKC-13-1128, 2014 WL 856653 (D. Md. Mar. 4, 2014)

In the instant case, the undisputed facts show that Defendants neither paid for nor acquired title to all of the containers and Stackers from TRS before they sold them to the Army. Compl. ¶¶ 24, 25. In addition, Defendants refuse to pay TRS for the remaining cost of the containers and Stackers, despite receiving payment from the Army. Compl. ¶¶ 11, 12, 15. Importantly, ABD received notice via the disclaimer on the invoice, that,"[t]itle and ownership of the equipment shall not pass to buyer until payment in full has been received." Compl., Ex. B. Thus, TRS has established that Defendants exerted ownership or domain over TRS's property with the intent to deprive TRS of its full rights to that property. For these reasons, I recommend that this Court find in favor of TRS on Count Three.

### C. Damages

TRS seeks a judgment against Defendants in the amount of $76,900.00, and attorneys' fees and costs in the amount of $6,763.69. *See* Compl. ¶¶ 8, 12; Pl.'s Mot. Ex. 1. I recommend

that the Court award TRS $76,900.00, which represents the outstanding balance of the Total Order. However, I do not recommend that the Court award the full attorneys' fee request.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted). A trial court may exercise its discretion in determining the lodestar amount because it possesses " 'superior understanding of the litigation,' " and the matter is " 'essentially' " factual. *Thompson v. HUD*, MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (*citing Johnson*, 488 F.2d at 717-19).

In support of TRS's request for attorneys' fees and costs, TRS has submitted the declaration of its counsel, Marc E. Shach, Esq.  *See* Pl.'s Mot. Ex. 1.  According to the declaration, Mr. Shach spent a total of 11 hours on this matter, at a rate of $325.00 per hour, for the drafting of TRS's Complaint and the reviewing and editing of filings made to the Court. Shach Decl. ¶ 5.  Mr. Shach was assisted by Cara L. Herman, who spent 15.5 hours on the matter, at a rate of $190.00 per hour, for conducting legal research, coordinating service of process, and preparing, reviewing, and editing filings.  *Id.* at ¶ 6.  There are several reasons why the fee request warrants a reduction.  First, I note that the declaration of Mr. Shach is minimal and fails to provide a descriptive account of the tasks performed.  Second, this matter is not complex.  The Complaint is barely six pages long, and the Motion for Default Judgment is comprised of no more than four paragraphs.  Notably, TRS does not cite to one case in any of its filings.  A total of 26.5 hours billed for this matter is unreasonable.  I do, however, find that the rates of both Mr. Shach and Ms. Herman are reasonable.  Accordingly, I recommend that both attorneys' total hours be reduced by 5 hours, for a total of 16.5 hours (6 hours for Mr. Shach and 10.5 hours for Ms. Herman).  The total amount of attorneys' fees is therefore $3,945.00.  I further recommend that costs be awarded in the amount of $243.69, *see* Shach Decl. ¶ 4, for a total of $4,188.69.

**Conclusion**

For the reasons set forth above, I recommend that:

1. the Court GRANT TRS's Motion for Default Judgment (ECF No. 9);
2. the Court award TRS a judgment of $76,900.00 and $4,188.69 in attorneys' fees and costs, for a total of $81,088.69, owed by Defendants; and

   3. the Court award TRS post-judgment interest at the statutory rate.

I also direct the Clerk to mail a copy of this Report and Recommendations to Defendants.

Any objections to the Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).


Dated:  August 1, 2014　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge